UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

ANGUS CHEMICAL COMPANY      CIVIL ACTION NO. 12-1656

VERSUS      JUDGE ROBERT G. JAMES

GLENDORA PLANTATION, INC.      MAG. JUDGE KAREN L. HAYES

RULING

       Pending before the Court are a Motion for Partial Summary Judgment [Doc. No. 40] filed by Plaintiff Angus Chemical Company ("Angus") and a Motion for Partial Summary Judgment [Doc. No. 50] filed by Defendant and Plaintiff in Counter Claim Glendora Plantation, Inc. ("Glendora). For the following reasons, Angus' motion is GRANTED, and Glendora's motion is DENIED.

I.      FACTS AND PROCEDURAL HISTORY

       Angus owns an 80-acre facility in Sterlington, Louisiana, where the plant produces 40 nitroparaffin products. A byproduct of the production process is wastewater containing formaldehyde and acetone. The wastewater is removed from the plant via an underground pipeline, which carries it three and one-half miles away to a wastewater treatment plant.

       The three and one-half mile stretch is owned by others. Therefore, in 1978, Angus' predecessor-in-interest, IMC Chemical Group, Inc. ("IMC"), obtained rights of way or servitudes from the landowners for the pipeline. In a March 28, 1978 "Right of Way Easement Option" ("Option"), two landowners, George P. Smelser and Mary Tilford Smelser ("the Smelsers") granted IMC and its successors and assigns "an option to acquire a right of way and easement with the right to construct, maintain, inspect, operate, protect, alter, repair, replace and change the

size of a pipeline." [Doc. No. 23-4].  The pipeline was to be constructed "along a route to be

selected by [IMC] . . . after which a copy of the line location plat [was to be] furnished to [the

Smelsers] . . . and a copy . . .  attached to this agreement and become a part thereof."  *Id.*  The

Option provided a legal description of the Smelsers' property in Ouachita Parish and a drawing

was attached to the Option to "more clearly show[]" the property. [Doc. No. 40, Exh. A, pp. 995,

998-1001].  The drawing identified a "proposed" pipeline route with a 10" pipeline.

On August 31, 1978, IMC exercised the option, paying the Smelsers $13,365.00 for the

right of way.  Thereafter, the Option "automatically [became] an indefensible right of way

agreement without further action being necessary, and all of the rights, title and privileges granted

. . . thereafter be[came] vested in [IMC], its successors and assign[s]." [Doc. No. 40, Exh. A, p.

996].

In 1979, a 12" pipeline was constructed within the designated thirty-foot width,[1] but

portions of the pipeline on the Smelser property lay outside the route identified on the drawing

attached to the Option.

The right of way has continued to be recognized by the successors to the original grantors

and grantee.  Angus succeeded to IMC's rights, and the Smelsers sold their land to Glendora,

subject to the right of way.

There have been leaks from the more than 30-year-old pipeline in 2007, 2010, and 2011.

Because of the leaks and the involvement of the LDEQ, Angus decided to put in a new 16"

pipeline made of high density poleythylene, but leaving the old 12" pipeline plugged and

---

[1]The right of way was to be fifty feet in width during construction, but reverted to "a
permanent width of thirty (30) feet, measuring fifteen (15) feet on either side of the center line of
the right of way." [Doc. No. 40, Exh. A, p. 995].

abandoned.  Angus also placed two fiber optic cables parallel to the 16" pipeline, as well as a tracer wire on top of the pipeline.

Some time after November 30, 2011, Angus tried to obtain permission from the affected landowners to abandon the 12" pipeline.  All but Glendora agreed.  In a January 27, 2012 letter, Angus made an offer to pay $237,000.00 to Glendora for authorization, but Glendora refused.

On June 14, 2012, Angus filed the instant Complaint, seeking a declaratory judgment that Angus has a valid servitude, that per the servitude it may abandon the 12" pipeline once a new pipeline is in place, that it may lay the pipeline, cables, and tracer wire (as set forth above), that the servitude will be fifty feet in width during construction and thirty feet in width thereafter (fifteen feet on either side of the center line of the original pipeline), and that it has right of ingress and egress.  Alternatively, Angus prayed for a declaratory judgment that it obtained the servitude via acquisitive prescription.

In early August 2012, Angus' construction manager, Ronnie Sharp ("Sharp"), solicited a quote to determine the cost of delaying the construction of the 16" pipeline across Glendora's property.  He was told the delay would cost approximately $40,000 on a project with an overall cost of $3,000,000.  However, Sharp did not delay construction.

On August 13, 2012, Glendora filed an answer and counterclaim.  Glendora alleges that in December 2011, it was shown a survey plat with the proposed right of way which showed that the existing pipeline is located in a different place than shown on the drawing attached to the 1978 option.  Glendora also argues that Angus has no right to install additional lines or fiber optic cables adjacent to the new pipeline, nor does it have the right to abandon the existing pipeline. Glendora prays for a declaratory judgment on this issue and also seeks damages for the trespass,

as well as damages for agricultural losses, soil degradation, cleanup costs, and remediation as a result of the December 11, 2011 pipeline rupture and wasterwater spill.  Finally, Glendora seeks an order compelling Angus to remove that portion of the pipeline located in a different area from the drawing attached to the 1978 Option.

Even though this lawsuit was pending, Angus installed the 16" pipeline on Glendora's property on or about August 17, 2012, along with two fiber optic cables running parallel to the 16" pipeline and a tracer wire located on top of the pipeline.  Between October 3 and November 12, 2012, Angus cleaned, plugged and abandoned the old 12" pipeline.

On October 25, 2012, Glendora amended its counterclaim to allege that Angus violated the right of way by conducting construction outside the thirty foot right of way and by using the right of way for two pipelines.  Glendora also alleged that Angus's action constituted a bad faith trespass.  Glendora seeks damages for land leveling, ditching, the substitution of lesser quality topsoil, and road damage.

## II.      LAW AND ANALYSIS

### A.      Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit

under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder

could render a verdict for the nonmoving party.  *Id.*

     If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache

Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some

metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court

must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its

favor.  *Anderson*, 477 U.S. at 255.

     **B.**    **Cross Motions for Partial Summary Judgment**

     Angus moves the Court for summary judgment on the following claims and/or issues: (1)

that Angus has a valid and enforceable servitude through the property of Glendora; (2) that the

right-of-way agreement is a personal servitude of rights of use; (3) that Angus is not a trespasser[2];

(4) that Glendora is not entitled to recovery of Angus' profits; and (4) that Angus' installation of

the fiber optic cables and tracer wires was within the bounds of the right-of-way agreement and

the accessory rights afforded the owner of a right of use.

     In its opposition to Angus' motion, Glendora concedes that Angus has a valid and

enforceable servitude and that the right-of-way agreement creates a personal servitude of rights of

---

[2]To reach this conclusion, Angus argues that the Court should find, as a matter of law, that the right of way through which both pipelines travel was defined by the as-built location and that the abandonment of the 12" pipeline neither breaches the Right-of-Way Agreement nor constitutes a trespass. [Doc. No. 40, pp. 11-19].

5

use.  The Court agrees, and, to this extent, Angus' Motion for Partial Summary Judgment is GRANTED.

However, Glendora otherwise opposes Angus' Motion for Partial Summary Judgment and moves the Court to (1) find that Angus did not have authority under the right-of-way agreement to abandon the original 12" pipeline in place, (2) find that Angus did not have authority to construct and operate the additional 16" pipeline and fiber optic cables with the 12" pipeline in place, (3) declare that Angus is a trespasser on Glendora's property; (4) declare that Angus' trespass is in bad faith; and (5) dismiss Angus' request for a declaratory judgment.

Given the overlapping nature of the parties' remaining claims, the Court will consider the motions together.

### 1.      Right-of-Way Agreement

The parties agree that the Right-of-Way Agreement between IMC and the Smelsers, to which the parties in this litigation have succeeded, conveyed a personal servitude of right of use. *See* LA. CIV. CODE ART. 639 ("The personal servitude of right of use confers in favor of a person a specified use of an estate less than full enjoyment."); *see also* LA. CIV. CODE ART. 642 ("A right of use includes the rights contemplated or necessary to enjoyment at the time of its creation as well as rights that may later become necessary, provided that a greater burden is not imposed on the property unless otherwise stipulated in the title.").  The Right-of-Way Agreement[3] is a contract, and the Court, sitting in diversity, must apply Louisiana law on the interpretation of contracts.

Interpretation of a contract is the determination of the common intent of the parties." LA.

---

[3]Although the language of the servitude is set forth in the Option, the Court hereinafter refers to the Right-of-Way Agreement to differentiate the time after the Option was exercised.

CIV. CODE ART. 2045.  "When the words of a contract are clear and explicit and lead to no absurd

consequences, no further interpretation may be made in search of the parties' intent."   LA. CIV.

CODE ART. 2046.  "The words of a contract must be given their generally prevailing meaning."

LA. CIV. CODE ART. 2047.   Where words or provisions in the contract are susceptible to more

than one meaning, the meaning given must be that which renders the contract effective and best

reflects the object of its makers.  LA. CIV. CODE ARTS. 2048, 2049.   However, if the meaning of

the words or provisions are doubtful, interpretation must be made "in light of the nature of the

contract, equity, usages[4], the conduct of the parties before and after the formation of the contract,

and of other contracts of a like nature between the same parties."  LA. CIV. CODE ART. 2053.

The determination of whether the terms of a contract are clear or ambiguous is a question

of law.  *See Hendrick v. Patterson*, 47,668 (La. App. 2d Cir. 2013), 109 So.3d 475.  "Moreover,

when a contract can be construed from the four corners of the instrument without looking to

extrinsic evidence, the question of contractual interpretation is answered as a matter of law and

summary judgment is appropriate."  *Ritter v. Commonwealth Land Title Ins. Co.*, 2013 WL

4080914 at *3 (La. App. 1 Cir. 2013) (citing *Sims v. Mulhearn Funeral Home, Inc.*, 07–0054, pp.

9–10 (La. 5/22/07), 956 So.2d 583, 590).

The Right-of-Way Agreement provides in pertinent part:

George P. Smelser and Mary Tilford Smelser. . . Grantor . . . does hereby grant,
bargain, sell and convey unto IMC CHEMICAL GROUP, INC., . . .as Grantee, an
option to acquire a right of way and easement with the right to construct, maintain,
inspect, operate, protect, alter, repair, replace and change the size of a pipeline for

---

[4]In *Kenner Industries, Inc. v. Sewell Plastics, Inc.*, 451 So.2d 557, 560 (La. 1984), the
Louisiana Supreme Court found that, "(t)he customs of the industry may be considered when
construing ambiguous contracts . . . . Any deviation from industry custom should have been
expressly stated in the agreement."

the transportation of liquids, gases, solids in either singular or mixed form or any other substances which can be transported through pipelines, together with all incidental equipment and appurtenances, either above or below ground, including but not limited to filtering devices, valves, meters, drips, and other necessary and convenient installations, on, over, under, across and through the following described property, along a route to be selected by the Grantee, after which a copy of the line location plat will be furnished to Grantor and a copy will be attached to this agreement become and a part hereof.  It is understood that the right of way will be fifty (50) feet in width for the purposes of construction and upon completion thereof, said right of way shall revert to a permanent width of thirty (30) feet, measuring fifteen (15) feet on either side of the center line of the right of way.  The property subject to this agreement is situated in Ouachita Parish, Louisiana, and described as follows, to-wit:

> Lands of Grantor in Sections 46, 42 and 43, Township 19 North, Range 4 East and Sections 37 and 38, Township 19 North Range 3 East as is more clearly shown on Grantee's drawing attached hereto and made a part hereof.

together with the right of ingress and egress over and across the land described above for any and all purposes necessary to the exercise of the rights herein granted . . . . .

[Doc. No. 40, Exh. A].

### 1.      Construction of 1979 Pipeline

As an initial matter, Glendora argues, in part, that Angus is a trespasser because a portion of the pipeline falls outside the boundary of the thirty-foot right of way "as shown on the drawing attached to the Option." [Doc. Nos. 7 & 14].  Angus does not dispute the fact that a portion of the pipeline falls outside the boundary depicted in the drawing, but points out that the drawing showed only a "proposed 10" pipeline" and that the language of the Right-of-Way Agreement permitted its predecessor to construct a pipeline "through the . . . described property, along a route to be selected by [IMC]." [Doc. No. 40, Exh. A].  The final as-built 12" pipeline was within the Smelsers' property, along a route selected by IMC and to which the Smelsers and their

8

successor made no objection for more than thirty years.

Under Louisiana law, a civil trespass is the "unlawful invasion of the property of possession of another." *Boudreaux v. Palquemines Parish Gov't*, 22 So.2d 1117, 118 (La. App. 4th Cir. 2009). If the 1979 construction of the pipeline was permitted under the Right-of-Way Agreement, however, Angus' predecessor, IMC, could not have unlawfully invaded the Smelsers' land.

Having reviewed the terms of the Right-of-Way Agreement, the Court finds that it clearly and unambiguously permitted IMC to construct the original pipeline in 1979 along a route it selected within the legal property description of the Smelsers' land. The fact that IMC then failed to provide a copy of the final line location plat to the Smelsers or attach a copy to the Right-of-Way Agreement is of no moment to IMC's right to construct the pipeline along its selected route.[5] Thus, the Court finds that Glendora cannot establish a breach of contract or a trespass on this basis.[6] To this extent, Angus' Motion for Partial Summary Judgment is GRANTED, and

---

[5]Glendora urges the Court to reject Angus' argument that the drawing was attached as a further description of the property and was likely the "first modern depiction of the property." Glendora contends that any depiction of the pipeline would have been pointless if the drawing was meant only to describe the property, and Angus is merely speculating as to the reason it is attached. However, if the route were established, it would also have been pointless to label it "proposed," and Glendora disregards the reality that routes, even if established, sometimes have to be changed once construction begins.

[6]Even if the proposed route had been somehow binding, the Court finds that the pipeline's location outside that route is properly viewed as a breach of contract. Although not raised by the parties and not necessary to the Court's determination, a breach of contract claim brought more than thirty years after the construction of the pipeline is well outside the prescriptive period. The Court is aware of Glendora's argument that it could not have known where the pipeline was located until 2007, but this argument clearly discounts the fact that the Smelsers certainly could have and should have known where a pipeline was placed on their property at the time it was constructed.

Glendora's Motion for Partial Summary Judgment is DENIED.

### 2.    Construction of 16" Pipeline and Abandonment of 12" Pipeline

Next, the Court must consider Angus' 2012 construction of the 16" pipeline.  It is undisputed that the Right-of-Way Agreement permitted Angus to replace the 12" pipeline with the 16" pipeline.  However, the parties dispute whether Angus had the contractual authority under the Right-of-Way Agreement to construct and operate the additional 16" pipeline, while abandoning the 12" pipeline in place within the thirty-foot right of way.

Angus contends that its right to "replace" the 12" pipeline with the 16" pipeline, encompassed the right to abandon the 12" pipeline in place and that the Right-of-Way Agreement neither gave it the right to nor required the removal of the 12" pipeline.

Glendora argues that the term "replace" required Angus to remove the old pipeline. Instead, Angus admittedly left the 12" pipeline in place and temporarily capped it, so that the 12" pipeline can serve as a backup.  By doing so, Glendora contends Angus has committed a bad faith trespass on its land.  Glendora further contends that Angus has also committed a bad faith trespass because the Right-of-Way Agreement only permitted the maintenance and operation of one pipeline, but Angus is now maintaining and/or operating two pipelines.

The clear and unambiguous language of the Right-of-Way Agreement permits Angus to "replace" the 12" pipeline.  The Right-of-Way Agreement does not define "replace" and does not contain any provisions relating to either the removal of a replaced pipeline or the abandonment of that pipeline in place.  The Court must give the term "replace" its generally prevailing meaning. In that regard, both parties have cited to dictionary definitions of "replace."   Glendora cites *The American Heritage Dictionary of the English Language* (5ᵗʰ ed.), which defines "replace" as "1.

10

To put back into a former position or place: replaced the sofa after vacuuming; 2. To take the place of or fill the role of: Jets have largely replaced propeller planes; 3. To provide a substitute for (something broken or unsatisfactory, for example: to replace a spark plug; replace a team's coach." [Doc. No. 55, p.11]. Glendora argues that "[w]hen a light bulb is replaced in a single bulb lamp, the old light bulb is not left in the socket. Likewise, when a pipeline is replaced pursuant to a clear and unambiguous single pipeline right, the pipeline to be replaced cannot be abandoned on the ground." *Id.*

On the other hand, Angus argues that Glendora has ignored the "glaring omission" from the Right-of-Way Agreement, which is "the obligation to 'remove' a pipeline." [Doc. No. 59, p. 4]. Moreover, Angus argues that in "common usage," the term "replace" is more akin to "'substitute,' and while a substitution may occasionally involve a removal, such a requirement is neither common usage nor inherent in the term. . . ." *Id.* at p. 5. Angus cites to Merriam-Webster, which defines "replace" as

1: to restore to a former place or position ‹*replace* cards in a file›
2: to take the place of especially as a substitute or successor
3: to put something new in the place of ‹*replace* a worn carpet›

MERRIAM-WEBSTER'S ONLINE DICTIONARY (2013 ed.). Angus admits that some of the examples in various dictionary definitions presuppose that an item will be removed before its replacement is substituted. However, Angus argues that removal is not "inherent in the definition of replace," but is instead "incumbent in the nature of the thing being replaced." [Doc. No. 59, p. 5]. Expounding on the examples accompanying the definitions both parties have cited, Angus points out that home buyers who take up worn carpet may find hardwood floors underneath, so it was clear that the hardwood was not removed before being "replaced" with the new flooring, carpet.

Similarly, jets may have "largely replaced" propeller planes, but propeller planes have not been removed from airports; instead, this replacement speaks to the greater use of jet engines, rather than propeller engines, in commercial planes.  Finally, as a final "illustration" that "'remove' is not part and parcel of the right to 'replace,'" Angus cites *Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303 (5th Cir. 2002), where the defendant was granted "'a servitude, right of way and easement to construct, lay, maintain, operate, alter, repair, **remove**, change the size of, and **replace** a pipeline and appurtenances thereof . . . . .'"   [Doc. No. 59, p. 6 (quoting 290 F.3d at 308) (emphasis added)].

In this case, the Court finds that, applying the generally prevailing meaning, the term "replace" does not require Angus to remove the 12" pipeline which is no longer in operation. Although the term "replace" could, in some cases, imply a corresponding duty to remove, the Court agrees with Angus that the appropriate definition in this case is to "substitute." Angus substituted one operating pipeline (the 12" pipeline) with another (the 16" pipeline), but a substitution does not require the removal of the non-operating pipeline.  This definition of "replace," as applied, renders the contract effective and reflects the object of the makers to allow the chemical company to operate one pipeline through the property to dispose of wastewater at its wastewater facility.  Further, such a definition is consistent with the apparent practice of others holding servitudes on Glendora when, as Angus points out, old pipe not belonging to Angus or its predecessor had to be removed during the installation of the 16" pipeline.[7]

---

[7]Glendora relies heavily on testimony and emails of Angus employees and contractors to support its argument that abandonment of the 12" pipeline was not permitted by the Right-of-Way Agreement.  However, the Court has concluded that the language of the Right-of-Way Agreement was clear, and, thus, parol evidence is irrelevant to the Court's legal determination.

However, even if Angus had the general right to abandon the old pipeline in place, the Court must also consider Glendora's argument that Angus is now operating and/or maintaining *two* pipelines, instead of "a pipeline" as contemplated by the Right-of-Way Agreement.  In support of its argument, Glendora cites testimony from Angus' site leader, Ernest Green ("Green"), that the 12" pipeline was a possible backup to the 16" pipeline, which is consistent with the work order prepared by the contractor.  Green testified that use of the 12" pipeline as backup constituted having two pipelines in "operation" at once.  The project manager for the 16" pipeline construction, M.A. Shah ("Shah"), testified consistently that the 12" pipeline was a backup for the 16"pipeline.  Further, at the least, Glendora points to Green's testimony that Angus has to "maintain" the 12" pipeline as a backup.

Angus responds that the use of the term "a pipeline" in the Right-of-Way Agreement does not limit the number of pipelines on the property, "only the one upon which [Angus] may act" in operating, maintaining, inspecting, protecting, altering, repairing, and changing the size.  [Doc. No. 59, p. 11].  Contrary to Glendora's contentions, Angus asserts that there are not two pipelines being operated and maintained because only the 16" pipeline is operational.

The Court finds that Angus is not operating or maintaining two pipelines based on the abandonment of the 12" pipeline or based on its possible use as a backup for the operational 16" pipeline.  It is undisputed that wastewater from Angus flows through only one pipeline–the 16" pipeline–, and it is further undisputed that the 12" pipeline was cleaned and capped.  Thus, Angus is not **operating** two pipelines.  Speculation or conjecture that Angus might remove the caps and use the 12" pipeline in the future does not render Angus currently in breach of the Right-of-Way Agreement or result in the commission of a trespass.

13

Moreover, while Green answered "yes," to the question that Angus has a duty to "maintain" the 12" pipeline, his testimony is irrelevant to the Court's legal determination.  The Court must again apply the generally prevailing meaning of the term at issue.  Merriam-Webster defines "maintain" as follows:

> 1:  to keep in an existing state (as of repair, efficiency, or validity) :  preserve from failure or decline <maintain machinery>
>
> 2:  to sustain against opposition or danger :  uphold and defend <maintain a position>
>
> 3:  to continue or persevere in :  carry on, keep up<couldn't maintain his composure>
>
> 4a:  to support or provide for <has a family to maintain>
>   b:  sustain<enough food to maintain life>
>
> 5:  to affirm in or as if in argument :  assert<maintained that the earth is flat>

*See Merriam-Webster,* http://www.merriam-webster.com/, last visited November 18, 2013.  The applicable definition in this case is to "preserve from failure or decline," but, other than Green's irrelevant and conclusory opinion, there is no indication Angus has in fact done anything to preserve the 12" pipeline from failure or decline by abandoning and capping it.  The undisputed facts show that this 1979 pipeline was leaking, which is why it was replaced and capped. Therefore, the Court finds that Angus is not operating or maintaining two pipelines in breach of the Right-of-Way Agreement, nor is it engaged in a bad faith trespass of Glendora's property based on these arguments.  Angus' Motion for Partial Summary Judgment is GRANTED,[8] and

---

[8]Angus moved for summary judgment on the basis that its installation of 16" pipeline and abandonment of the 12" pipeline did not constitute a trespass because they were permitted under the Right-of-Way Agreement.  Although Angus did not specifically move for summary judgment on Glendora's claim that Angus is "maintaining" two pipelines, the Court finds it appropriate to grant summary judgment to Angus and deny Glendora's motion for summary judgment, having concluded that Angus is neither operating nor maintaining two pipelines in contravention of the Right-of-Way Agreement.

Glendora's Motion for Partial Summary Judgment is DENIED.

### 3.    Installation of Tracer Wire and Fiber Optic Cables

Finally, the parties dispute whether Angus' installation of tracer wire and two fiber optic cables was contractually permitted under the Right-of-Way Agreement or constitutes a bad faith trespass.

Under the language of the Right-of-Way Agreement, Angus is permitted to construct not only a pipeline, but "all incidental equipment and appurtenances . . . and other necessary and convenient installations . . ."  The undisputed facts show that the tracer wire was installed to allow Angus to check for leaks in the pipeline, and the fiber optic cables, which are not currently operable, would permit Angus to control operation of the wastewater treatment facility from its main control room at the chemical plant.

Applying the clear and unambiguous language of the Right-of-Way Agreement, Angus had the right to install the tracer wire.  In fact, this would appear to the Court to be the very type of incidental equipment permitted by the right of way, as it allows Angus to detect and locate the 16" pipeline in the event of future leaks and would, thus, protect Glendora from damage to its property.  Moreover, as Angus points out, Louisiana Civil Code article 642, provides that a "right of use includes the rights contemplated or necessary to enjoyment at the time of the creation as well as rights that may later become necessary, provided that a greater burden is not imposed on the property unless otherwise stipulated in the title." Although tracer wire was not in use in 1979 when the pipeline was constructed, it is available now, serves to protect both parties, and, located within the bounds of the servitude, creates no greater burden on the property.  Because the Court finds that Angus was within its authority to install the tracer wire, Angus' Motion for Partial

Summary Judgment on this issue is GRANTED, and Glendora's Motion for Partial Summary Judgment is DENIED.

The parties argue more contentiously over the fiber optic cables.   Angus asserts that it was entitled under the Right-of-Way Agreement and Article 642 to install the fiber optic cables to "monitor, maintain, and protect" the 16" pipeline. [Doc. No. 40, p. 22].   Angus argues that this technology "enhances the performance and safety of the pipeline and could not have been specifically addressed since it did not exist in 1979.  Glendora asserts that the fiber optic cables are not "incidental or necessary" as set forth in the Right-of-Way Agreement because the cables have not been connected.   Glendora further asserts that the "primary" purpose of the fiber optic cables, based on evidence from Angus and its contractors and employees, is "not related to the wastewater pipeline," but is intended to allow Angus to operate the wastewater treatment plant from the plant production control room. [Doc. No. 50, p. 18].

Again applying the plain language of the Right-of-Way Agreement, the Court finds that Angus had the authority to install the fiber optic cable as "incidental equipment and appurtenances . . . **and** other necessary and convenient installations . . . ."  Under the broadly worded language of the Right-of-Way Agreement, this installation is permissible, whether viewed as "incidental" or "necessary and convenient."  Although the fiber optic cables are not currently connected, they will give Angus the ability to control the flow and pressure of the wastewater traveling through the 16" pipeline.  These tasks are currently monitored by radio telemetry, but this is newer technology giving Angus a second way to check flow and pressure.  Accordingly, on this issue, Angus' Motion for Partial Summary Judgment is GRANTED, and Glendora's Motion for Partial Summary Judgment is DENIED.

16

### III.     CONCLUSION

For the foregoing reasons, Angus' Motion for Partial Summary Judgment [Doc. No. 40] is GRANTED.  Glendora's Motion for Partial Summary Judgment [Doc. No. 50] is DENIED.   The Court finds that Angus has a valid and enforceable servitude through the property of Glendora; that the Right-of-Way Agreement created a personal servitude of rights of use; (3) that Angus had the authority under the Right-of-Way Agreement to construct the 16" pipe and abandon the original 12" pipeline in place; and (4) that Angus had the authority under the Right-of-Way Agreement to install fiber optic cables and tracer wires.  In light of the Court's determinations, the Court need not reach Glendora's arguments regarding trespass or trespass in bad faith.

MONROE, LOUISIANA, this 20th day of November, 2013.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE