UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ANGUS CHEMICAL COMPANY** | **CIVIL ACTION NO. 12-1656** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **GLENDORA PLANTATION, INC.** | **MAG. JUDGE KAREN L. HAYES** |

RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 89] filed by Plaintiff Angus Chemical Company ("Angus"). Angus moves the Court for summary judgment on the only remaining claim by Defendant and Plaintiff-in-Counterclaim Glendora Plantation, Inc. ("Glendora"). For the following reasons, Angus' motion is GRANTED IN PART and DENIED IN PART.

I.     FACTS AND PROCEDURAL HISTORY

Angus owns an 80-acre facility in Sterlington, Louisiana, where the plant produces nitroparaffin products. This case concerns Angus' rights to transport wastewater from the plant via an underground pipeline on the land belonging to Glendora under a March 28, 1978 "Right of Way Easement Option" ("Option") executed with the prior landowners.

The facts in this case were set forth in detail in the Court's November 20, 2013 Ruling [Doc. No. 86], which are hereby incorporated by reference. The Court limits its more thorough discussion of the facts to those relevant to Glendora's remaining claim for damages.

In 2007, Angus' 12" pipeline leaked wastewater because of splitting longitudinal cracks in the pipeline. At the time, Angus did not replace the pipeline. Instead, Angus began performing above-ground inspections of the property where the pipeline was buried. When the pipeline

leaked again in 2010, Angus began taking steps to replace the pipeline.

Prior to its replacement, however, on December 11, 2011, the pipeline ruptured at another longitudinal crack, which caused wastewater to spill onto Glendora's property. After the spill, Angus temporarily shut down the wastewater transfer pumps and constructed an earthen dam to prevent impact to surface waters. Vacuum trucks were used to recover the released wastewater and the area in the immediate vicinity of the release was excavated, so the pipeline could be repaired.

Angus then engaged the services of an environmental contractor, URS Corporation ("URS"), to test and clean up the spill. Angus also notified the Louisiana Department of Environmental Quality ("LDEQ") of the spill.

Glendora engaged the services of PPM Consultants, Inc. ("PPM"), to independently assess the property damage caused by the spill and to monitor the testing and cleanup process by URS at a cost of $63,032.20.

Angus and its contractors removed the contaminated soil on Glendora's property and then backfilled it. Angus did not have the area precision leveled, although it had been precision leveled prior to the spill.

Brian Moore ("Moore"), a former Environmental Health and Safety Specialist for Angus, was "site commander" of the "emergency response and cleanup activities." [Doc. No. 89-1, p. 5.]. Moore testified in his deposition that soil and water samples were collected from the area of the spill and were split with Glendora, so PPM could conduct its own testing. Angus submitted the findings of URS to LDEQ, which was satisfied with the results of remediation and closed its file.

On June 14, 2012, Angus filed the instant Complaint, seeking a declaratory judgment that

Angus has a valid servitude, that per the servitude it may abandon the 12" pipeline once a new pipeline is in place; that it may lay the pipeline, cables, and tracer wire; that the servitude will be fifty feet in width during construction and thirty feet in width thereafter (fifteen feet on either side of the center line of the original pipeline); and that it has right of ingress and egress. Alternatively, Angus prayed for a declaratory judgment that it obtained the servitude via acquisitive prescription.

On August 13, 2012, Glendora filed an answer and counterclaim. Glendora argued that Angus has no right to install additional lines or fiber optic cables adjacent to the new pipeline, nor does it have the right to abandon the existing pipeline. Glendora prayed for a declaratory judgment on this issue and also sought damages for trespass, as well as damages for agricultural losses, soil degradation, cleanup costs, and remediation as a result of the December 11, 2011 pipeline rupture and wasterwater spill. Finally, Glendora sought an order compelling Angus to remove that portion of the pipeline located in a different area from the drawing attached to the 1978 Option.

While the lawsuit was pending, Angus installed the 16" pipeline on Glendora's property on or about August 17, 2012, along with two fiber optic cables running parallel to the 16" pipeline and a tracer wire located on top of the pipeline. Between October 3 and November 12, 2012, Angus cleaned, plugged and abandoned the old 12" pipeline. Angus did not precision level the pipeline right of way after installing the 16" pipeline.

On October 25, 2012, Glendora amended its counterclaim to allege that Angus violated the right of way by conducting construction outside the thirty foot right of way and by using the right of way for two pipelines. Glendora also alleged that Angus's action constituted a bad faith

trespass. Glendora sought damages for land leveling, ditching, the substitution of lesser quality topsoil, and road damage.

On November 20, 2013, the Court issued a Ruling and Judgment [Doc. Nos. 86 and 87] granting Angus' Motion for Partial Summary Judgment [Doc. No. 40] and denying Glendora's Motion for Partial Summary Judgment [Doc. No. 50]. The Court ruled (1) that Angus has a valid and enforceable servitude through the property of Glendora; (2) that the Right-of-Way Agreement (i.e., the Right-of-Way Option, as adopted on August 31, 1978), created a personal servitude of rights of use; (3) that Angus had the authority under the Right-of-Way Agreement to construct the 16" pipe and abandon the original 12" pipeline in place; and (4) that Angus had the authority under the Right-of-Way Agreement to install fiber optic cables and tracer wires. In light of the Court's determinations, the Court declined to reach Glendora's arguments regarding trespass or trespass in bad faith.

As a result of the Court's Ruling, the parties agree that all but one issue has been resolved: whether Angus is liable for damages allegedly incurred by Glendora as a result of the December 11, 2011 pipeline rupture and wasterwater spill. On December 6, 2013, Angus filed the instant Motion for Summary Judgment [Doc. No. 89] on this remaining issue. On December 27, 2013, Glendora filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 91]. On January 10, 2014, Angus filed a Reply [Doc. No. 92] in support of its Motion for Summary Judgment. On January 14, 2014, with leave of Court, Glendora filed a Sur-Reply Memorandum [Doc. No. 95]. Finally, with leave of Court, on February 4, 2014, Angus filed a Response to Sur-Reply [Doc. No. 98].

The parties have stipulated that if the Court grants the instant Motion for Summary

Judgment, this case will be resolved. [Doc. No. 99]. If the Court denies the instant Motion for Summary Judgment, pursuant to the parties' stipulation, a bench trial will be held on April 8, 2014.

## II.     LAW AND ANALYSIS

### A.     Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

> The Fifth Circuit Court of Appeals has instructed that, when no jury demand is made, a
>
> court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . . A trial on the merits would reveal no additional data. Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony. The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

*Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978) (citations omitted). Thus, where "the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions." *Id.; see also Matter of Placid Oil Co.*, 932 F.2d 394, 397-98 (5th Cir. 1991) (same).

    B.    **Damages from December 11, 2011 Pipeline Rupture**

Louisiana Civil Code article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

It is undisputed that Angus was the owner of the pipeline and is liable for any damages incurred by Glendora as a result of the December 11, 2011 pipeline rupture and wastewater spill. However, Angus moves for summary judgment, arguing that the property has been cleaned up to regulatory standards; the property has been restored to its pre-spill condition; there is no residual damage; there is no proof of crop yield loss; there is no evidence of damage to ditches, roads, and other portions of the property; and there is no evidence to support claims that a "poorer quality fill dirt" was used in remediation, resulting in agricultural losses. [Doc. No. 189-2, ¶¶ 2-3, 5-7].

Glendora opposes Angus' motion and asserts that there are genuine issues of material fact for trial on their claim for damages. Glendora contends that Angus used "subpar fill dirt to replace the dirt removed . . . as a result of the pipeline rupture," caused damage to "land leveling and ditching on Glendora's property as a result of the installation of the 16" pipeline," and is responsible "for the costs incurred by Glendora in hiring PPM Consultants, Inc. to 'assess the damages caused and monitor the testing and cleanup being conducted by Angus and its contractors' as a result of the pipeline rupture." [Doc. No. 91-2, ¶1].

First, the Court finds Glendora is not entitled to recover damages based on the release of unacceptable levels of constituents onto Glendora's property. The undisputed evidence shows that URS[1] and PPM, consultants for both parties, found that Angus' actions restored the property to levels below LDEQ regulatory standards,[2] and LDEQ ordered no further corrective action before closing its file on this incident. Experts retained by both parties support this conclusion. Glendora's own expert, Dr. Baer, found that constituents which may have been in the wastewater are of a "particularly harmful nature," but he does not state the amount of constituent in the soil and water before and after the cleanup, and he relies on the report of PPM, the firm which found

---

[1] To the extent that Glendora contends that URS's report is admissible hearsay, the Court need not refer to the report itself when there is no disputed issue of fact that, in the words of Glendora's own expert: "[T]he corrective action activities . . . by URS and Angus have remediated concentration in soil below the LDEQ RECAP and URS derived Screening Standards," and the wastewater was removed. [Doc. No. 89, Exh. C, PPM Report, p. 11]. Further, to the extent that Glendora contends that PPM's report is also hearsay, Angus correctly argues that the Court may consider that report under Federal Rule of Evidence 801(d)(2)(A) as a statement offered against Glendora and made by its agent, PPM.

[2] Two of Glendora's principals, President Freddy Nolan and Secretary/Treasurer William Hoover admitted in their depositions that their consultant, PPM, found that URS had properly remediated the site of the leak. [Doc. No. 89, Exh. H, Deposition of William Hoover, p. 81; Exh. G, Deposition of Freddy Nolan, p. 156].

that no further action was necessary. Angus' expert, Brent Pooler of Hydro-Environmental Technology, Inc. ("HET") reviewed the data from PPM and URS; the report of Glendora's expert, Dr. Kevin Baer; and other data and concluded that the remediation efforts were performed timely, appropriately addressed environmental concerns, and no further action was necessary.[3] Thus, to this extent, Angus' Motion for Summary Judgment is GRANTED.

Additionally, Angus moves for summary judgment to the extent that Glendora seeks damages for inconvenience to its principals. The Court agrees that Glendora, as a juridical entity, is not entitled to recover non-pecuniary damages. *See Kelly v. Porter, Inc.*, 687 F. Supp.2d 632, 638 (E.D. La. 2010). Thus, to this extent, Angus' Motion for Summary Judgment is also GRANTED.

However, the Court finds that Glendora has raised genuine issues of material fact for trial on the remaining claims for damages. With regard to the claim for PPM's fees, Glendora's President, Freddy Nolan ("Nolan"), believed that Angus had previously failed to remediate the damages from the 2007 spill on another property.[4] Based on this knowledge of the earlier spill, the Court finds that Glendora has raised a genuine issue of material fact whether it was "necessary and appropriate . . . to retain PPM to oversee Angus' remediation efforts and to evaluate any damage to the property to ensure that Angus's history of neglecting its duty to remediate property

---

[3]Again, even if the HET report is technically hearsay, that report only supports the otherwise admissible evidence. This case is now scheduled for a bench trial, and Glendora offers no argument or evidence to suggest that Brent Pooler's testimony at trial would differ from the report. Indeed, his testimony would be limited to report.

[4]The Court is not going to engage in a trial-within-trial analysis of the 2007 spill by delving into the alleged facts of the earlier spill. The Court does accept, for purposes of summary judgment, that Nolan *believed* Angus failed to take proper action following the 2007 spill.

contamination did not repeat itself." [Doc. No. 91, p. 10]. Angus' Motion for Summary Judgment on this damages claim is DENIED.

Angus has also moved the Court for summary judgment on Glendora's claim that it failed to return the property to its "pre-contaminated" condition and suitability for cotton farming. [Doc. No. 91, p. 7]. Angus contends that the two principals of Glendora, Hoover and Nolan, admitted that there is no residual damage and that they have no evidence that the leak would cause reduced crop yields, in either the short term or long term.

Glendora responds that Angus has mischaracterized the testimony of Hoover and Nolan. Glendora admits that there is no residual soil or water damage from constituents in the wastewater. Glendora further admits that Angus removed the contaminated soil and replaced it with backfill dirt. However, Glendora argues that Angus failed to take all necessary steps to address the damage caused to the farming operation because Angus used inferior backfill dirt and failed to precision level the land, after the backfill was complete or after installing the 16" pipeline.[5] Glendora relies on the testimony of its longtime lessee-farmer, Williams, who testified that he raised cotton in the area where the soil was dug out because of the pipeline leak. [Doc. No. 91, Exh. 3, Deposition of Gary Williams, p. 33]. Williams observed the soil that Angus used to backfill the property and said that it "[l]ooked like sand," and thus was not suitable for farming. *Id.* at pp. 36-37. Although Williams did dirt work and leveling before he planted the cotton crop, the field was not precision leveled, and Williams testified that water did not reach the crop as it

---

[5] Although the installation of the 16" pipeline is a somewhat separate issue from the wastewater spill, the cracks in the 12" pipeline necessitated the change. If Glendora can prove that Angus' failure to precision level caused damage to the farming operation of Glendora's lessee, Angus would be liable for that damage as well.

9

should. *Id.* at 33-34. He explained that any time agricultural land has been disturbed by digging, it takes some time for the soil to return to its undamaged condition. *Id.* at pp. 37-39. The soil has to be tested, will require fertilizer, and, even then will result in "more stunted plants." *Id.* at pp. 38-39. Hoover and Nolan aver that the area of the spill was "visibly infertile" compared to other parts of the property. [Doc. No. 91, Exhs. 1 & 2, Affidavits of Freddy Nolan and William Hoover].

Having considered the parties' arguments and the evidence presented, the Court finds that Glendora has raised a genuine issue of material fact for trial on this claim. In addition to any other witnesses Glendora may present, Williams, a longtime farmer who actually worked the land, can provide the Court with testimony and further elucidation on the damages caused. Thus, Angus' Motion for Summary Judgment on this damages claim is DENIED.

Finally, Angus moves for summary judgment on Glendora's claim that Angus damaged its roads, culverts, and ditches. Angus contends that there is no evidence to support this claim, and no expert testimony. However, Glendora responds that it has produced 360 photographs of the property depicting the damage caused to its roads, culverts, ditches, drainage, and land leveling, both inside and outside the right of way. Glendora again relies on the testimony of Williams to support its claim for land leveling within the right of way. Glendora further relies on the affidavit testimony of Hoover and Nolan that Angus' failure to precision level the land within the right of way after construction of the 16" pipeline disturbed drainage and irrigation outside the right of way. Hoover avers that Angus hauled dirt and water from the site in wet conditions causing ruts that have never been repaired. Nolan avers that the photographs depict the damage.

The Court finds that Glendora has raised a genuine issue of material fact for trial on this

claim. While Hoover and Nolan have an interest in the outcome, they are also fact witnesses who can authenticate and explain the alleged damages depicted in the photographs. Thus, Angus' Motion for Summary Judgment on this damages claim is also DENIED.

### III. CONCLUSION

For the foregoing reasons, Angus' Motion for Summary Judgment [Doc. No. 89] is GRANTED IN PART and DENIED IN PART. To the extent that Angus moves for summary judgment on Defendant and Plaintiff-in-Counterclaim Glendora's damages claim for inconvenience and damages based on the release of unacceptable levels of constituents onto Glendora's property, the motion is GRANTED, and these claims are DISMISSED WITH PREJUDICE. The Motion for Summary Judgment is otherwise DENIED, and this matter remains set for bench trial on April 8, 2014.

MONROE, LOUISIANA, this 3rd day of March, 2014.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE